## In re SCHLESINGER.

(District Court, S. D. New York. December 2, 1899.)

**1. BANKRUPTCY—REQUIRING BANKRUPT TO PAY OVER MONEY.**

A court of bankruptcy has authority to order the bankrupt to pay over to his trustee money in his hands which belongs to his estate in bankruptcy, when the bankrupt's present possession or control of the money, and his retention of it in fraud of his creditors, are proved beyond a reasonable doubt.

**2. SAME—EVIDENCE.**

Where it appeared that a bankrupt, within a period of seven or eight months before filing his petition, had received and deposited in bank sums of money amounting to over $12,000, all of which he drew out, the last check being drawn and the account balanced three days before the petition was filed; that he kept no books of account, and his check book was not produced; that all the checks returned to him by the bank (244 in number) were destroyed, although his attorney was then engaged in preparing his petition and schedules; that he testified that the money in question was all paid away, but professed ignorance or lack of recollection as to all particulars; that he admitted having received $2,000 for the sale of an equity in real estate, about a month before the bankruptcy, but gave no satisfactory explanation of his disposition of it; and that his testimony in several particulars was inconsistent and contradictory, and in some false,—held, that the evidence warranted an order requiring the bankrupt to pay over to his trustee the money in his hands belonging to his estate, which, making allowance for charges, losses, and expenses, would be fixed at $6,500.

In Bankruptcy.

Hillary C. Messimer, for trustee.
Black, Olcott, Gruber & Bonynge, for creditors.
Samuel Strasbourger, for bankrupt.

BROWN, District Judge. The trustee applies for an order directing the bankrupt to pay over the sum of $12,000 and upwards, which it is claimed is shown by the bankrupt's examination and other evidence, to be under his control. The referee denied the application, except as to the sum of $25.50 admitted in the schedules to be in the bankrupt's possession, on the ground that no specific sum beyond that was shown to remain in the bankrupt's control at the time his petition was filed.

In the summary of facts, the referee finds that upwards of $12,000, which has come into the possession of the bankrupt during the seven or eight months preceding the filing of the petition, was in no way satisfactorily accounted for. Debts for merchandise to the amount of nearly $18,000 during that period are unpaid; the stock was made up and sold, and the proceeds all collected, except the remaining stock and debts to the amount of about $3,200. During the same period the bankrupt deposited as shown by his bank pass book, $24,465.85, all of which was drawn out, the last on April 17th, three days before his petition was filed. The bankrupt kept no books of account. The check book was not produced, and all checks returned were destroyed. No account could be extracted from him as to what was done with these moneys, except that they were paid out. To all inquiries for particulars, his answer was, "I don't know," or "I don't remember." He was contemplating an application in bankruptcy for about a month prior to filing his petition. From the 17th of March to the 17th of April he deposited in his bank about $4,600. His book was balanced on the 17th of April, and according to the entry in the pass book, 244 vouchers were then returned to him, amounting to $13,300.16 from the previous December 30th. Though counsel had already been employed by him for the preparation of his petition in bankruptcy, all these 244 vouchers the bankrupt said were destroyed by him as soon as received, and nothing can be ascertained to whom or for what these payments were made.

The bankrupt further testifies that in March he received $2,000 for the conveyance of his equity in a house and lot, 34 E. Fourth street. The deed was dated March 23d and recorded April 20th, the same day his petition in bankruptcy was filed. The grantee being absent in Europe, he could not be examined. No account is given of what disposition was made of the $2,000 which it is said were received in bills, except that they were paid out, or deposited. There is no corresponding deposit in the bank book. In several details of his testimony the bankrupt's evidence was inconsistent and contradictory and was in some particulars proved to be false. The referee considered it incredible that the bankrupt was as ignorant of his business and his payments as he professed to be, and he did not consider him worthy of belief. No special losses, and no special causes of loss in business, were intimated by the bankrupt in his testimony.

It is seldom, I think, that so open a defiance of the requirements of the bankrupt law is met with. The examination of the bankrupt was begun on May 9th, while his business transactions were

yet recent. The ignorance he professed in regard to the disposition of his money, is altogether incredible. I cannot regard his testimony on this subject as other than a tissue of perjuries. The destruction of vouchers while his papers in bankruptcy were preparing, is not consistent with any other inference than the intent to conceal the facts and defraud his creditors. In re Salkey, Fed. Cas. No. 12,253. It is no doubt correct, as the referee observes, that no order for the payment of money "should be made unless the testimony in the case is such as to satisfy one beyond a reasonable doubt that the same is in fact in the possession or under the control of the bankrupt"; and great caution should no doubt be observed in applying this remedy. In re McCormick (D. C.; Nov. 17, 1899) 97 Fed. 566. A debtor, however, is not to go scot-free because the precise amount of his frauds and concealments is not ascertainable; nor should the bankrupt act be suffered to be paralyzed, as respects the interests of creditors, by such means. Upon the evidence I cannot conceive that a jury of merchants would for a moment hesitate in declaring that beyond all reasonable doubt the bankrupt has concealed a large amount of his property. Making every possible allowance for charges, minor losses, store and family expenses, a finding of upwards of $10,000 unaccounted for would be justified by the testimony. To be entirely within the limits of any possible doubt, I shall fix the amount required to be paid over by the bankrupt, at $6,500, an amount extending back but a few weeks prior to the time of filing his petition.

An order may be entered accordingly.