## In re ADLER.

(District Court, W. D. Tennessee. March 10, 1904.)

1. BANKRUPTCY—ORDER REQUIRING BANKRUPT TO PAY OVER MONEY—SUFFICIENCY OF SHOWING.

　　To warrant an order requiring a bankrupt to pay over a sum of money to his trustee under penalty of punishment for contempt as against his denial that he has such sum in his possession or under his control, such fact must clearly appear. That he has defrauded his creditors, or that he has failed in his examination to satisfactorily account for the value

of property which he should have had if statements made to commercial agencies prior to his bankruptcy were true, is not sufficient ground for such an order.

2. SAME—PROCEDURE.

Proceedings to require a bankrupt to pay over money or surrender property to his trustee should ordinarily be by motion for a rule on him to show cause, and should be justified by the facts brought out in the examination of himself and other witnesses in the regular course of the proceedings. Unless under exceptional circumstances, where it is necessary to bring before the court facts not appearing in the examination, or new parties, a formal petition and pleadings as in a suit in equity are unnecessary, and an expense which should not be permitted by the court; nor should the court or referee entertain such proceedings at all unless there is sufficient in the evidence, taken in the regular course of the proceedings, to warrant the order sought prima facie.

In Bankruptcy. On review of order of referee.

J. W. Apperson, for trustee.

L. Lehman, for bankrupt.

HAMMOND, J. This is a petition to review the action of the referee in directing the bankrupt to show cause why he should not be compelled to pay over to the trustee in bankruptcy the sum of $7,000, which it was alleged he had in his possession or under his control. The trustee filed a petition setting forth, in substance, that the bankrupt some nine months before his bankruptcy had made a report to the commercial agencies showing that he had on hand a stock of goods of the value of $9,000, and that subsequently, and more recently before his bankruptcy, he had purchased other invoices of goods which ran the aggregate of his purchases to a considerably larger sum. The petition then sets out the debts which he had paid, and the more or less accurately estimated expenses of his business, and by a simple sum in arithmetic calculates that he should still have on hand about $7,000. The prayer of the petition was that he should be required to show cause why he should not be compelled to pay this money over to the trustee by a peremptory order to that effect, to be followed, of course, by contempt proceedings to enforce the order. This petition was demurred to by the bankrupt, the demurrer overruled, and an order to show cause issued and served upon the bankrupt according to its prayer. From that order of the referee this petition for review was filed.

The question presented by counsel at first related solely to the sufficiency of the demurrer, but the court passed that question as quite immaterial in the attitude of the record, and inquired of counsel for the trustee whether or not the proof showed that the bankrupt had this money in his possession or under his control, to which answer was made that it was only shown by a necessary inference to be drawn from the facts proven in the record. The petition of the trustee was predicated of the disclosures brought out by the examination of the bankrupt and the proof of certain witnesses concerning his affairs. This examination shows substantially what is alleged in the petition—that the bankrupt had made the reports stated to the commercial agencies, and that he had expended the sums of money that were mentioned in the examination, and, according to his state-

ment, other sums not so definitely shown, and in his examination he gave as an excuse for not having more money on hand that he had wasted it in gambling on the horse races by buying pools at the pool-room on the other side of the river in Arkansas, kept for the use of those participating in this city in such gambling enterprises. The creditors undertook to prove that the bankrupt had never been seen in this pollroom, and, from such facts and circumstances, that this story of losing the money on the races was untrue. In a general way, it may be said that the proof shows that as late as November before the filing of the petition of the bankrupt in January he had on deposit in the banks some $400 in money, and at one time he drew out of the bank as much as $1,400 of money. The bankrupt explains his affairs by saying that the statements that he made to the commercial agencies were untrue, that they were exaggerated for the purpose of making a good showing for his credit, that he kept no books of account except a scratcher to show to whom he had sold goods on a credit, that his accounts with his creditors were simply kept by placing his invoices on a file wire, that he kept only a small store or shop, and that his business did not amount to anything like the sums of money indicated by the creditors. There is no more conclusive proof than this as to the possession of the money, and it is not claimed by counsel that any more conclusive proof is available, but only that it is a necessary implication from these facts that the bankrupt is concealing the money and withholding it from his trustee.

The court does not think that this is at all a necessary presumption, and is of the opinion that upon such proof it is not within the powers of the bankruptcy court to direct the bankrupt to pay the money into court under the penalties for contempt. Such a construction of the bankrupt law would be only to revive the long since abolished process of imprisonment for debt, which is both obsolete and unconstitutional. The court has no doubt of the power of the court, where it reasonably appears that the bankrupt has the money in his possession or under his control, to compel him to pay it over; but that fact must appear by something more substantial than mere presumptions or inferences taken from such circumstances as those which have been proven in this case. To invoke that power requires something like incontestible proof as against the bankrupt's denial that he has the money. The fact that he accounts falsely for his dissipation of the money, the fact that he does not satisfactorily disclose his uses of it, the fact that he evades the exhibition of his conduct in the premises, may indicate that he has defrauded his creditors, that he has dealt falsely with them, that he has egregiously perjured himself and forsworn the truth, and may invoke other remedies under the statute; but not this of a peremptory order to pay the money to the trustee, and punishment by contempt for a failure to do so. That remedy applies only to a fund which can be designated and traced into his possession, so that it is, in a legal sense, a tangible fund on which the court can lay its hands; and it cannot be made to apply to some intangible money supposed to be kept in his possession which he can be forced to pay by raising or procuring the money to meet the orders of the court. No doubt many bankrupts could be made, under

the coercion of imprisonment, to find the money with which to meet such a demand; but the law does not proceed upon the theory of thus compelling a bankrupt to pay his creditors that which he owes them.    It would be in substance and in fact a mere revival of the discarded remedy of imprisonment for debt.    Therefore, unless the court can see that the bankrupt is in possession of the money, and withholding it wrongfully, it will not make such an order as that which is applied for in this case.    The bankrupt may be indicted under the criminal features of the act, his discharge may be refused, he may be compelled by contempt proceedings to answer questions which he evades and refuses to answer, and to disclose the rights of action that may belong to the trustee by reason of his dealings with others; and thus in many ways he may be compelled to give the fullest statement of his affairs; but, no matter how fraudulent his conduct may be, the creditors cannot resort to this method of compelling him to pay his debts, when there is not sufficient proof that he is concealing money or other property in actual possession or control.

The court wishes to take this occasion to protest against the growing habit in the bankruptcy cases of lumbering up the record with petitions and litigation growing out of them that is expensive, and an unnecessary tax upon the assets of a bankruptcy estate.    The creditors and their trustee in bankruptcy, by the ordinary process of the examination of the bankrupt, and the power to compel all witnesses who have any knowledge of his affairs to come before the referee and be examined in relation thereto, have ample procedure for disclosing all the facts in relation to the bankrupt's affairs which would furnish a foundation for an order on him to pay money into court, or to surrender property in his possession to the trustee.    He is in a certain sense ever present in court to answer such demands, and all that is necessary is a simple motion for a rule upon him to show cause against the order that is required, and petitions for that purpose are wholly unnecessary.    Here we have, without the least necessity for it, such a petition, with a demurrer for repugnancy and other technical objections, and all the expenses incident to such a litigation as if it were a formal bill in equity; and it seems to be the habit to proceed by petition in almost every controversy that arises in the bankruptcy proceedings, thus incurring an unnecessary expense. It may sometimes be necessary to file a formal petition, as it is sometimes necessary in equitable proceedings; but such a method is rarely essential, and should never be resorted to unless the purpose is to bring into the notice of the court some outside matter that does not appear by the ordinary record, or some outside party who is not bound or ready to take notice of the proceedings in bankruptcy; and a simple notice and rule to show cause, and oftentimes a mere affidavit, is all that is necessary to accomplish everything that could be accomplished by a formal and expensive petition.    Therefore the court has concluded in this case to disregard the demurrer to this petition, treating it as an unnecessary pleading in any event, but amply sufficient to do that which a simple motion or rule to show cause would just as effectually accomplish.    The court does not wish to establish the precedent that the trustee may not, if necessary, proceed in a matter like

this by petition, and therefore it might overrule this demurrer; but it is not necessary to dispose of the case upon its merits to send it back to the referee for a formal answer to this petition, and a possible return of it here upon a petition for review upon exceptions which may be taken to that answer, thus injecting into a bankruptcy proceeding—unnecessarily, the court must insist—a formal suit as expensive and formidable as a regular bill in equity. If the trustee has not been able, through the ordinary procedure of an examination of the bankrupt and the witnesses in the bankruptcy proceedings, to show that the bankrupt has in his possession money or property that he ought to be directed to turn over to his trustee, the court will not allow a new litigation to be initiated and carried on by this petition for the purpose of making such a showing on any such mere presumptions as those that are contained in this petition.

Therefore the order of the court will be that this demurrer be overruled, but that the petition shall be dismissed, because it appears from the record of the proceedings in bankruptcy that there is no foundation in any of the disclosures made about the bankrupt's affairs for any rule upon him by petition or otherwise requiring him to show cause why an order should not be made upon him to surrender money or other property to the trustee in bankruptcy. It will be time enough to issue such a rule when the trustee shall show, by the examination of the bankrupt, or witnesses who know the facts, that this bankrupt has in his possession a fund of $7,000 which he should be required to turn over to the trustee, and it is not at all necessary that we shall inaugurate any proceedings by petition or otherwise for that purpose. The ordinary power of examination is amply sufficient for it, and the rule, as the record now stands, will be refused.

Ordered accordingly.