## In re LEINWEBER.

### (District Court, D. Connecticut. March 24, 1904.)

### No. 910.

1. BANKRUPTCY—CONCEALMENT OF ASSETS—RECOVERY.

Where, shortly before the filing of a voluntary bankruptcy petition, the bankrupt collected, principally in a single month, over $3,000 from current sales, and paid more than such sum, as he alleged, to ancient and distant creditors, in the first half of the same month, and, on being given ample opportunity to corroborate his statement as to such payments by producing such creditors, he obtained the evidence of but one, an order directing him to pay to his trustees the amount so alleged to have been paid to the creditors not produced was proper.

In Bankruptcy.

J. B. Ullman and Wm. L. Bevins, for bankrupt.

P. T. O'Brien, F. S. Fay, and W. F. Davis, for creditors.

PLATT, District Judge. On February 5, 1904, Referee Newton issued an order that the bankrupt pay to Thomas P. Dunne, trustee, $2,630 on or before February 26, 1904. Is that a lawful order, in view of the facts then before him? The order was an evolution from certain facts, of which the following are the most important:

The bankrupt was examined at a meeting of the creditors held August 1, 1902, and, by continuance, on August 20th, September 5th, and October 3d of the same year. During that examination bankrupt testified that, shortly prior to his petition, principally in July, he collected over $3,000, and paid out the moneys so collected to certain creditors of long standing, of which this list covers the important payments:

| | | | |
|---|---|---|---:|
| July 8. | Fred Wertzel | | $ 500. |
| " 10. | Geo. Breng | | 930. |
| " 10. | John Smith | | 700. |
| " 11. | James Hurst | | 600. |
| " 13. | John Fredericks | | 400. |
| | | | $3,130. |

His schedules are dated July 15, 1902. Claims therein set forth and proved by creditors before the referee, between June 25th and July 22d, amount to $3,700. It thus appears that the bankrupt used the avails of his later purchases to pay ancient and far-away creditors, if his statements are worthy of belief. His actions are despicable, if he tells the truth, and I agree with the referee in his denunciation thereof.

The creditors contend that upon the evidence, taken as a whole and critically examined, it was evident that the names given were those of mythical characters, or, at best, of existing characters to whom was attributed a part in a mythical transaction. Divers efforts were made to compel the bankrupt to corroborate his story by producing the alleged payees, with their statements of such facts as would naturally be in their possession. The referee gave him unusual opportunities to raise a reasonable doubt, but he failed to do so. At a meeting in

128 F.—41

New Haven the bankrupt finally produced one man, said to be James Hurst, and another, who was expected to remove the mystery which surrounded Smith. But, just as the performance was about to begin, both witnesses vanished into thin air, and after exhaustive search they were not located, and the mystery remained, and still remains, as impenetrable as ever. Wertzel was a Meriden man, and the bankrupt succeeded in producing him, and it would seem that his testimony must have mollified the creditors, since the amount now ordered to be paid does not include the $500 which the bankrupt testified he had paid to him.

In these circumstances, the referee issued the order which I am asked to review. I have examined the testimony with care. The circumstances surrounding the alleged payments, when aggregated, fall little short of producing an irresistible inference that the bankrupt did not tell the truth. If there were room for a reasonable doubt to creep in, the creditors ought not to ask the court to apply the rack and thumbscrew, or to experiment upon the bankrupt; but the action of the referee was from every possible viewpoint quite appropriate and laudable. I am satisfied, beyond a reasonable doubt, that on the date of the order the bankrupt had in his possession, or under his control, the moneys which he was ordered to pay over to the trustee, and, as I understand my duty, I must sustain and approve the order. I am fortified in respect of my action by the position which Judge Brown took in Re Schlesinger (D. C.) 97 Fed. 930, which was confirmed by the Court of Appeals for this circuit. 102 Fed. 117, 42 C. C. A. 207.

The bankrupt relies upon Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451. I am not persuaded by the reasoning of the majority of the court in that case. Judge Sanborn, in his opinion, while for obvious reasons concurring in the result, sets forth succinctly the principles which evidently controlled the court in the Schlesinger Case, and cites several federal authorities in support thereof.

The order herein sought to be reversed was a lawful one, and the action of the referee is sustained.