---

## In re COLE.

### (District Court, D. Maine. March 4, 1905.)

#### No. 74.

BANKRUPTCY—CONCEALMENT OF ASSETS—EVIDENCE.

In a proceeding against an involuntary bankrupt to recover assets, evidence *held* to support a finding that the bankrupt had under her control the sum of $2,425, which she had concealed and refused to surrender to her trustee.

In Bankruptcy.

Benj. F. Cleaves and Albert S. Woodman, for trustee, Chas. A. Moody.

Geo. F. & Leroy Haley, for bankrupt.

HALE, District Judge. This case now comes before the court upon the certificate of John B. Donovan, referee, in which he says that the following question arose, pertinent to the proceedings:

"On October 24, 1904, the trustee filed in this case with the referee a petition under oath, in which said trustee alleges a concealment of assets of the

bankrupt, and a refusal to turn over the same. After notice and hearing, the referee ordered said bankrupt to turn over the sum of twenty-four hundred twenty-five dollars, as appears by the order. From the findings and order of the referee the bankrupt appeals, in writing. The matter is hereby certified to the judge of said court. The petition above mentioned, the evidence in the case, and the findings and order of the referee are included in this certificate."

The referee's findings of fact relating to the question at issue are fully stated in his report. The facts material to be stated are: That on the 14th day of September, 1903, the bankrupt sold her homestead, on Elm street, in Saco, to Frank L. White, of Saco, for $3,800 in cash. Her husband joined in the deed of warranty given by her. Mr. White, the grantee, paid the purchase price in bills, instead of by check. He says he did this at Cole's request, but Cole denies this. In November, 1903, upon the petition of her creditors, involuntary proceedings against the bankrupt were begun, and she was adjudicated a bankrupt, and subsequently filed her schedules. By these schedules it appears that the only debts she owed were to three local banks, who are the petitioners, and that her only assets were the $3,800 which she claims to have loaned her husband. The schedule does not show any security taken, nor name any date when the loan was made. Less than two weeks after selling the homestead, the bankrupt and her husband moved to Massachusetts. The bankrupt denies ever having seen any of the proceeds of the sale of the home, and says that she gave the money to her husband at the time of the sale, and told him to pay his debts with it. She also says that she made no inquiry as to any payment, or to whom he paid the money, but that she has not the money, and never had it, and is not concealing the same from her trustee. The husband says he had the money—received it from Mr. White, the grantee of the real estate—and that the money is all gone. He undertakes to account in detail for the payment of $3,625. He says, among other things, that he paid $1,000 to a brother in Nicaragua by registered letter. The bankrupt's statement is that she never had a dollar of the money herself in her own hands, and so she claims she cannot be held to turn it over to her trustee. She says that her husband had the money put in his hands in bills, and carried the bills to Massachusetts with him soon after their receipt. The court will not undertake to state fully all the testimony recited by the referee.

The conclusions of the referee are as follows:

"The evidence here satisfies me conclusively that Mrs. Cole had full control over the proceeds of the sale of her home. It was her money which bought the lot, and, while her husband paid the bills for the erection of the building, she supplied the funds. It is highly incredible to believe for a moment that she did as she says—give him that money to pay his debts, which he did not pay, and which she must have known were still unpaid when they left Saco. The home was gone. The departure for another state from the place of her youth was before her. It appears to me that this fund came into the possession of them both at the day of the sale, was fully under her control, and it has so remained, except that which was disbursed from it, and which I shall allow as fully and as amply as the facts seem to warrant. It was under her control at Wakefield when she said that it had been sent away to her husband's brother. 'We thought differently,' was her reply when she was asked why it was not paid to the banks and the brother pro rata. She did not then claim or state that she had delivered it to her husband for the payment of

his debts. Her statement at that time served its purpose. I cannot accept as true her version of the transaction. Her mind was the controlling one at the interview at Wakefield, and has so remained. There has been no haste in affording her every opportunity to fully inform her trustee as to her affairs. She has been well served by counsel of ability, having a long time to submit evidence. The evidence is conclusive that she still controls a portion of the fund. The testimony of the husband that he sent one thousand dollars, as described, is incredible. He was a business man; knew how to forward money to a foreign country by draft or in some safe manner, and not assume the risk of fire and flood, which, if incurred, would entail loss beyond recall, and still leave his brother's debt unpaid. That brother, as has been stated, has been within the jurisdiction of this court since she first knew a petition of this character was to be filed. While this opportunity to corroborate the claim of payment was not taken advantage of, it carries still stronger conviction that the whole scheme was a fraud, and a plan to avoid the payment of these notes. It is a hard case—one that has involved care and anxiety on my part to do justice as the facts appear to me to warrant. I shall allow the payments to the amount of thirteen hundred seventy-five dollars, as follows: [Here follow the items which make up the said amount of $1,375.] These payments were made, as claimed by Mr. Cole, after the sale of the house, and prior to the date of the filing of the involuntary petition, and, no doubt, were fully understood and assented to by the bankrupt. For several of those payments she was also liable. I find that she has under her control the balance of the same fund to the amount of twenty-four hundred twenty-five dollars, and that she had possession or control of the same at the time of the filing of the petition in bankruptcy against her on November 23, 1903; that said bankrupt withheld and concealed the same from her trustee as assets of her estate, and is withholding and concealing the same from him. I do therefore order the said bankrupt, Annie M. Cole, to pay over to said trustee the sum of twenty-four hundred twenty-five dollars on or before the 16th day of January, 1905, and that a certified copy of the original petition and this order be served by the trustee on her forthwith; a copy of the findings and order to be delivered to the counsel for the petitioner and bankrupt."

The learned counsel for the bankrupt urged with great earnestness and ability that the testimony taken before the referee showed that she had no control of the funds received from the real estate, and that, not having control of such funds, she cannot be compelled to account for them; that the law does not undertake to compel a bankrupt to perform an impossibility. And learned counsel cited the controlling decisions bearing upon this proposition. But upon a full examination of the testimony, the court cannot say that the referee has erred in his conclusions of fact. The referee has found affirmatively that the bankrupt has under her control the balance of the fund to the amount of $2,425, and that she had possession or control of it at the date of the filing of the petition in bankruptcy; that she has withheld and concealed the same from her trustee, and is now withholding and concealing the same from him. The referee had the witnesses before him. He conducted the examination of the bankrupt herself, saw her appearance, and was the proper tribunal to decide the question of fact submitted to him. After full examination of the testimony, I cannot say that I should have come to a different conclusion. In any event, the conclusion of a competent referee, who has seen the witnesses, is entitled to great weight.

After fully examining the testimony and considering the arguments of counsel, the court sustains the findings of the referee. It is therefore ordered that the bankrupt turn over and deliver to the trustee

within 15 days the said sum of $2,425, in default of which she stand committed to the marshal of this district, to be incarcerated until she obeys the order of this court or is otherwise discharged by due process of law, or until the further order of this court.