## MOODY v. COLE.

(District Court, D. Maine. November 6, 1906.)

### No. 74.

1. BANKRUPTCY—PROCEEDINGS FOR CONTEMPT—MEASURE OF PROOF REQUIRED.
   A proceeding in bankruptcy to enforce obedience to an order requiring a bankrupt to surrender property or money to his trustee is criminal in character, and a finding that the bankrupt is in contempt should be reached only on evidence which induces belief beyond a reasonable doubt; but where it meets such requirement, the court should exercise the power of commitment expressly given by the statute, and not compel the trustee to resort to a plenary suit.

2. SAME.
   In a contempt proceeding to enforce obedience to an order requiring a bankrupt to pay over money to his trustee, the denial of the bankrupt that he has the money in his possession or under his control is not conclusive, but is entitled to its due weight in connection with the other evidence and circumstances shown.

In Bankruptcy. Proceeding for contempt.

Haley & Haley and Bartlett & Anderson, for the bankrupt.

Albert S. Woodman and Cleaves, Waterhouse & Emery, for the trustee.

HALE, District Judge. This case now comes before the court upon the petition of Charles A. Moody, trustee in bankruptcy of the estate of Annie M. Cole, praying that the bankrupt may be ordered to show cause why she should not be adjudged in contempt for failure to comply with an order of the court, and that, if adjudged in contempt, she shall be dealt with in accordance with the law. The matter from which this proceeding arises was brought into the District Court of the District of Maine by the certificate of one of its referees, by which it appeared that the referee ordered the bankrupt, Annie M. Cole, to pay over the trustee the sum of $2,425 on or before the 16th day of January, 1905. It will be found by the opinion of the District Court in 135 Fed. 439, that the District Court sustained the findings of the referee. Thereupon, on March 4, 1905, the District Court entered an order:

"That the bankrupt turn over and deliver to the trustee, within fifteen days, the said sum of twenty-four hundred and twenty-five dollars. in default of which she stand committed to the marshal of this district, to be incarcerated until she obeys the order of this court, or is otherwise discharged by due process of law, or until the further order of this court."

The decree of the District Court was then taken to the Circuit Court of Appeals to revise matters of law. In the opinion of the Circuit

Court of Appeals, Judge Putnam makes a statement of the case. I quote enough of the opinion to show the attitude of the case as it now comes before this court:

"This is a revisory petition under the statutes in bankruptcy. The petitioner, Annie M. Cole, was duly adjudged bankrupt on a petition filed in November, 1903. It is claimed that she received in September, 1903, $3,800, as the proceeds of the sale of her homestead in Saco. This was paid in bills, and it is maintained by her that it was paid into the hands of her husband, and that no part thereof ever came into her hands. The trustee in bankruptcy admits that a portion of it has been accounted for, leaving $2,425, which, on his application, the referee directed should be paid over by Mrs. Cole to him. * * * Therefore, the fact remains that on this record the District Court might find, as a matter of fact, that, as to the possession of the proceeds of the sale, Mrs. Cole's husband was simply her representative or agent. Such being the case, it needs no citation of authorities to establish the further proposition that in the eyes of the law the possession of a mere agent is the possession of the principal. This proposition was enforced and applied with reference to funds to be transferred to the trustee, under the bankruptcy statutes in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, and in Mueller v. Nugent, 184 U. S. 1, 17, 18, 22 Sup. Ct. 269, 46 L. Ed. 405. It also cannot be denied that a bankrupt, whose funds are deposited with an agent, cannot, excuse himself from not delivering over the same to the trustee because so deposited, unless he shows, as a matter of fact, an inability to obtain the actual possession of what he ought to surrender. The record fails of any proof meeting this requisite condition. Therefore it does not in this regard present a question of the class of which we can take jurisdiction on a proceeding of this character, and consequently, so far as this portion of the case is concerned, the decision of the District Court must stand. We think, however, that there was error in that the District Court entered, in substance, a judgment for contempt, accompanying an alternative order for committal. It is plain that a proceeding for contempt is of a different character from one resulting in a mere order for the payment of money to a trustee in bankruptcy. It is claimed that it is criminal in its nature, while an order for the mere payment of money is civil; that it would be justified only by the proofs, and the amount of proofs requisite on ordinary criminal issues; and that it is, in effect, an independent proceeding, which can be initiated only after an order for payment of money has been disobeyed, and on an order to show cause, or some other new notice, given to the person alleged to be in default. It is sufficient now to say that the record does not show that Mrs. Cole had any day in court on the issue involved in that part of the order. in question. Without undertaking to say in what manner an issue may be so presented as to justify a proceeding for an alleged contempt, and entering a penal judgment on account thereof, we are of the opinion that the record, would show that the issue had been made in some way, and that the person adjudged guilty of contempt had had an opportunity to be heard in reference thereto. Rapalje on Contempts (1887) 126, 127, 128. For this reason, the order to which the petition relates must be annulled, except only so far as it affirms the decision of the referee, which directed that the money in question should be paid to the trustee."

The mandate, made in pursuance of the above opinion, contains the following order and decree:

"It is ordered, adjudged, and decreed, that the aforesaid decree of the District Court for the District of Maine be, and the same hereby is, annulled, except only so far as it directed that the money in question should be paid to the trustee; and as to so much of said decree as directed the payment to the trustee of twenty-four hundred and twenty-five dollars, the same is hereby affirmed, with interest thereon from the date of the entry of said decree in the District Court."

This petition for an order to show cause is directed to the above decree of the Circuit Court of Appeals. It is claimed by the petitioner that the bankrupt is now in contempt for failure to comply with that decree. In pursuance of the opinion and mandate of the Circuit Court of Appeals, the bankrupt was given her day in court, and on August 6, 1906, she appeared before this court, and testified as follows:

"Q. In your statement, I have understood you to say that you gave the money to your husband? A. I never gave the money to my husband; I never had the money to give him. Q. But the statement was made that you gave the money to your husband? A. It might be; not knowing how to express it. Q. Now, will you tell the court just exactly what you meant when you said that you gave him the money? A. I meant that I gave my permission for my husband to sell the house, and take the money and pay his debts. Q. Pay his debts; is that what you say? A. Yes. Q. To pay his debts. And as a matter of fact have you ever had from the time that house was sold the physical possession of that money in any way? A. Never, in any way. Q. Now, I want to ask you how old you are? A. I was born in 1843. Q. And how old is your husband? A. Mr. Cole is seventy-five in July. Q. Did you ever pay my brother (Mr. Haley) any attorney fees at all here in this matter? A. I never have. Q. And since the time of the passage of the order he has done work for you, has he not? A. Certainly. Q. Now, aside from the explanation that you desired to make to the court, in regard to the word 'give,' as used in your testimony, did you make a truthful statement in regard to your not having the money, and the testimony you gave before Mr. Donovan? A. Certainly."

The remainder of her examination and the testimony of her nephew, Winfield C. Jordan, added nothing which aids the court in coming to a conclusion. She has, then, testified that she is unable to comply with the order of the court, and it is claimed by her counsel, in his very able presentation of the cause to this court, that this denial of the bankrupt should be practically conclusive in the matter, and that in the face of such denial the court should not adjudge her to be in contempt. Clause 13 of section 2 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]) authorizes a court of bankruptcy to "enforce obedience by bankrupts, officers and other persons of all lawful orders, by fine or imprisonment, or fine and imprisonment." In courts of chancery an attachment to enforce obedience of an order to pay money or to surrender property has been regarded as a civil execution for the benefit of the equitable owners of the fund, and not as a criminal process; but in bankruptcy a proceeding of this nature is criminal in its character, and the conclusion that a party is in contempt should be reached only upon evidence which induces belief beyond a reasonable doubt. In re Salkey, Fed. Cas. No. 12,253; In re Schlesinger (D. C.) 97 Fed. 930; In re Goldfarb Bros. (D. C.) 131 Fed. 643; In re De Gottardi (D. C.) 114 Fed. 328.

In dealing with this question, the courts of bankruptcy of the country have held with great clearness that the power of commitment should be cautiously exercised, and only when its propriety is beyond reasonable doubt. Judges have used very strong, emphatic language in enforcing this doctrine, going so far as to say that the fact of the control of the bankrupt over the funds should be established by indisputable testimony before this great power of the court should be exercised. The courts of bankruptcy have also held that the answer of the respondent to the rule to show cause is not conclusive, but traversable;

that weight should be given to the denial of the bankrupt, but that it is the duty of the court to examine all the evidence, both circumstantial and direct, relating to the matter, and to see whether there are any inconsistencies in the bankrupt's testimony or conduct which affect his testimony.

In the Goodridge Case, Fed. Cas. No. 5,547, where a bankrupt was alleged to have concealed property in the hands of his brother, Judge Blatchford says:

"A fraud of the kind here alleged is one that can seldom be proved by other than circumstantial evidence. The parties to the transaction are generally, as in this case, the only witnesses, and if their stories are to be believed as told, no fraud can be established. External evidence is not to be had, and the truth must be reached by examining the evidence of the alleged parties to the fraud, and weighing its probabilities, and scrutinizing its general tenor and manner. * * * The determination of the question of fraud or no fraud must, under such circumstances, depend upon the impression made by the evidence of the parties concerned. Of course, those who would commit such a fraud, would swear falsely to carry it through. If their positive testimony to the honesty of the transaction is overborne by badges and indicia of fraud, deduced from their own testimony, the conclusion must be that there was fraud."

In the Schlesinger Case (D. C.) 97 Fed. 930, Judge Addison Brown comments upon the appearance of the bankrupt, his inconsistencies of conduct and of statement, and says:

"The referee considered it incredible that the bankrupt was as ignorant of his business and his payments as he professed to be, and he did not consider him worthy of belief."

In the Deuell Case (D. C.) 100 Fed. 634, the court comments upon the inconsistencies of the bankrupt's testimony. It says:

"When asked if she did not talk this matter over with her husband and son, who were assisting her in running the store, and ascertain what explanation they gave, or as to what theory they had to account therefor, her answer was equally uncertain and indefinite. As the goods were not on hand when she was declared a bankrupt, and as she claims the goods had not been spirited away, and testifies that they had been received and sold, the conclusion is irresistible that she must have the money in her possession, or that she knows who did receive it and who has it. * * * Shall she be permitted thus to obtain property of other people, secrete and appropriate it, without even so much as rendering any intelligible account thereof, and escape the pains and penalties imposed by the bankrupt law, simply because she is a woman, and under the naked assumption or bare possibility that her husband and son embezzled the proceeds of these goods?"

In Boyd v. Glucklich, 116 Fed. 140, 53 C. C. A. 456, the court says:

"A bankrupt cannot be imprisoned for the purpose of exploitation: Torture as a means of extracting evidence or forcing a confession is no longer allowable either in civil or criminal proceedings."

In the Goldfarb Bros. Case (D. C.) 131 Fed. 643, the District Court of Georgia says:

"A bankrupt cannot be required, under a proceeding for contempt, to do that which it is out of his power to do. The evidence in such a proceeding should satisfy the court beyond a reasonable doubt that the bankrupt has the money or goods in his possession and control, and is able to turn them over when so ordered."

In the Anderson Case (D. C.) 103 Fed. 854, the District Court of South Carolina says:

"I have not, then, the slightest doubt of the power of the court to commit for contempt in any proper case, but this power should be most cautiously exercised. Where the bankrupt denies possession or control, the fact of such possession should be established by indisputable testimony; for it is only in cases where it is proved beyond a reasonable doubt that the bankrupt is willfully disobedient in refusing to obey its orders that the court should feel itself compelled to punish such disobedience."

In the Adler Case (D. C.) 129 Fed. 502, the District Court of the Western District of Tennessee, in speaking of the power to commit for contempt to enforce the order of the court, says:

"To invoke that power requires something like incontestible proof as against the bankrupt's denial that he has the money. * * * That remedy applies only to a fund which can be designated and traced into his possession, so that it is, in a legal sense, a tangible fund, on which the court can lay its hands, and it cannot be made to apply to some intangible money supposed to be kept in his possession, which he can be forced to pay by raising or procuring the money to meet the orders of the court."

See In re De Gottardi (D. C.) 114 Fed. 328; In re Purvine, 96 Fed. 192, 37 C. C. A. 446, and cases cited; In re D. Levy & Co. (C. C. A.) 142 Fed. 442.

In the case before me I have treated the order to show cause as an independent proceeding, and have applied the rules of evidence pertinent to a criminal case. I find upon the threshold of the proceeding the decree of the Circuit Court of Appeals that the bankrupt pay over certain money to the trustee, and that she have her day in court upon the question whether she shall be held to be in contempt. In pursuance of the request of the respondent, I have considered only the testimony of the bankrupt herself, the greater part of which I have given in full, and of Mr. Jordan, her nephew, together with her examination before the referee, which she has verified and made part of her testimony. With reference to the other rulings, requests for which have been preferred by the learned counsel for the respondent, I do not find it necessary to pass upon them affirmatively and in detail; but it will be seen that I have adopted substantially the rules of law which he has invoked in the proceeding.

I have also examined the records of the District Court, so far as they are material, relevant, and admissible. In her schedule she states that the money forming the subject-matter of this proceeding was lent to her husband, William H. Cole. On her examination before the referee she says, "I gave him the money," and further, "I gave him the money to pay his debts; that is all I know about it." In her examination before me she says, "I never gave the money to my husband; I never had the money to give him." Her counsel then says, "The statement was made that you gave the money to your husband." She answers, "It might be; not knowing how to express it." She then testifies that she gave permission for her husband to sell the house, take the money, and pay his debts, and that she has never had, since that time, the physical possession of that money in any way. She thus makes three several statements and accounts of the money receiv-

ed from the sale of her house; first, accounting for it as a loan to her husband, and on the last two occasions giving slightly varying statements as to the money going into her husband's hands. She confines her testimony as to her inability to comply with the order of the court to the statement that she has no physical possession of the fund; she does not affirmatively say that she has no control of it. I do not place any great weight upon this technical failure to expressly negative her control of the money, but in the attitude the case has assumed it is proper to comment on the peculiar language used in her expression of inability to comply with the order of the court. Throughout the case, her whole testimony touching the disposal of the fund is indefinite, unsatisfactory, and inconsistent. Her husband is not produced to testify, although the Circuit Court of Appeals has held that he was her representative or agent. She does not say that she has ever tried to obtain the physical possession of the fund, and she assumes to be stolidly ignorant of all vital matters. Her alleged ignorance upon the business concerns with which she was brought in contact, and which form the subject-matter of the inquiry, is as noteworthy as was the ignorance of the respondent in the Schlesinger Case. In that case the court held it incredible that the bankrupt could be as ignorant of his business and payments as he professed to be, and that he could not be thought worthy of belief. I have endeavored to give full weight to the denial of the respondent, but if the denial of a bankrupt were taken as conclusive, he could always escape an order for the surrender of property by making a false statement, and adding perjury to his failure to comply with the decree of the court.

In the opinion of the Circuit Court of Appeals, Judge Putnam has said that the referee might have come to his conclusion upon a preponderance of the evidence in a matter relating to directing a payment; but the records of the District Court show that the referee did actually come to his conclusion upon testimony which induced belief beyond a reasonable doubt, and his order directing the payment of the money to the trustee has been affirmed by the District Court and the Circuit Court of Appeals.

In my view of the testimony in the case in its present attitude, it is the duty of the court to deal directly and summarily with the matter, and not to leave the trustee to further proceedings in chancery to obtain the fund in question.

In Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 269, 46 L. Ed. 405, to which the Circuit Court of Appeals has referred, Mr. Chief Justice Fuller has said:

"The bankruptcy court would be helpless, indeed, if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law."

The whole testimony, taken together, induces the belief in my mind, beyond a reasonable doubt, that the bankrupt has control of the $2,425, constituting the fund in question, and that she stands in contempt of the decree of the court. I therefore order that she stand committed

to the marshal of this district, to be incarcerated in the Portland jail within this district until she turn over and deliver to the trustee the sum of $2,425, in obedience to the order of the court, or is otherwise discharged by due process of law, or until the further order of this court.