## In re DEUELL.

### (District Court, W. D. Missouri, W. D.   March 16, 1900.)

BANKRUPTCY—ORDERING SURRENDER OF PROPERTY BY BANKRUPT.

A bankrupt trader was shown to have bought large quantities of goods on credit within a few months of her bankruptcy, but neither the goods nor their proceeds were listed in her schedule, or turned over to her trustee. She testified that the goods had been put into her store, and sold, but gave no explanation of the disappearance of the proceeds. No books of account were kept during this period, no money was deposited in bank, and no accounts against debtors for goods sold were found. The business was conducted by her husband and son, in her name, and under her supervision, and they testified that they did not appropriate or retain the money. *Held*, that the bankrupt should be ordered to surrender to her trustee the value of such property, after deducting the amount allowed for expenses and business losses, and should stand committed as for contempt until compliance with such order, or until the further order of the court.

In Bankruptcy. On review of ruling of referee in bankruptcy on proceedings against the bankrupt for contempt of court.

Karnes, New & Krauthoff, Gilmore & Brown, and Ellis, Reed, Cook & Ellis, for creditors—

Citing In re Salkey, Fed. Cas. No. 12,253; Id., No. 12,254; In re Purvine, 37 C. C. A. 446, 96 Fed. 192; In re Tudor (D. C.) 96 Fed. 942; In re McCormick (D. C.) 97 Fed. 566; In re Schlesinger, Id. 930; In re Mayer (D. C.) 98 Fed. 839.

James T. Burney, for bankrupt.

PHILIPS, District Judge. This case is certified to the court by the referee in bankruptcy for its action on a contempt proceeding against the bankrupt. On her examination, and that of other witnesses, before the referee, the referee found that she had failed to make a full schedule of the assets in her hands, and that she had in her possession and under her control goods, or their proceeds, of the value of $7,081.27, unaccounted for, and which she had failed to turn over to the trustee under the referee's order, and that she was in contempt therefor. The court has examined the testimony in this case, and has also examined the bankrupt fully in court respecting this matter. By her own statement she had on hand goods, about the 1st of July, 1899, invoiced at $1,700. Between that time and the making of her deed of assignment, about the 1st of December, 1899, she had obtained on credit from a large number of merchants, at various distant points, goods aggregating $10,000. Of these she purchased, in October, $2,649, and in November, $2,282, for none of which she had paid up to the time of her assignment and the proceeding in bankruptcy against her in the forepart of December, 1899. Taking credit for every conceivable payment, outlay, and expenditure between July and the time of the assignment, it would not exceed $2,300. She claims that the value of the goods by her turned over to the assignee was $2,193.50. If this were conceded to be correct, the aggregate credit to which she is entitled would amount to $4,493.-50. But the evidence shows that the cost price of the goods turned

over to the assignee did not exceed $1,200, and the sum realized by the trustee in bankruptcy out of these assets does not exceed but little over $500. Some of the goods surreptitiously sent away from the store during the fall of 1899, which have been traced by the trustee, would amount to about, say in round numbers, $400. Adding this to the $2,300, as claimed expenditure by her, and the $1,200 worth of goods turned over to the assignee, would make an aggregate of $3,900; or, if she were allowed $2,193.50, claimed by her to have been the value of the goods turned over to the assignee, it would make an aggregate of $4,893.50, which, on the most favorable view to her, would leave unaccounted for $5,106.50. This leaves out of view the goods invoiced the 1st of July, 1899. She testified before this court that the goods shipped to her from July to the time of the assignment were put into the store, and sold. She denies that any of the goods thus unaccounted for were shipped or spirited away; thus leaving, according to her own showing, as already stated, $5,106.50 worth of goods, at their invoice price, unaccounted for. She kept no book account, from July forward, giving an account of sales or the cash taken in; no accounts against debtors for goods sold are found; no money was deposited in the bank to her credit; and, when inquired of as to what explanation she had to make to account for such great discrepancy, her only answer was that she had none to make. When asked if she did not talk this matter over with her husband and son, who were assisting her in running the store, and ascertain what explanation they gave, or as to what theory they had to account therefor, her answer was equally uncertain and indefinite. As the goods were not on hand when she was declared a bankrupt, and as she claims the goods had not been spirited away, and testifies that they had been received and sold, the conclusion is irresistible that she must have the money in her possession, or that she knows who did receive it, and who has it. The business was conducted in her name. She thus published to the world that she was capable of transacting business, and she obtained credit for these goods upon the faith of her credibility and business capacity. Shall she be permitted thus to obtain property of other people, secrete and appropriate it, without even so much as rendering any intelligible account thereof, and escape the pains and penalties imposed by the bankrupt law, simply because she is a woman, and under the naked assumption, or bare possibility, that her husband and son embezzled the proceeds of these goods? When she assumed the office of a tradesman she became amenable to its obligations and responsibilities. She claims that part of the time—through the fall of 1899—she was sick, and was not at the store all the time; that her husband and son were, as theretofore, in charge, acting for her; but her own evidence is that these absences from the store were only occasional, and only for a few days at a time, so that it is quite inferable that during all this time she was at the store frequently enough to have been fully advised of what was going on in the business; and she must be presumed, as she is an intelligent woman, to have looked sufficiently into the daily and weekly transactions to have been fully advised of the disposition of the goods, and to have known where the money

was. As the money arising from sales was not deposited in the bank, she knew that her husband and son must have it, if the same was not by them turned over to her. Will the law permit that a responsible merchant, upon whose credit such a large amount of goods had been obtained, may thus shut her eyes, and make no inquiry and learn nothing about her business, ask nothing about the proceeds of the goods which were daily and weekly disappearing from the store, and, when called upon by the court to account therefor, or to render some reasonable explanation thereof, to escape the penalties of the bankrupt law by simply saying, "I have not the goods. I have no money?" She either has the money, or her husband and son embezzled it. They testified before the referee that they did not appropriate or have the money. Under such a state of affairs there can be but one judgment pronounced by the court, and that is that she must account for this money, or pay the penalty of her delict. The court, dealing in the most humane manner with this bankrupt, and making every possible allowance for improvident sales and careless business methods, and the loss that could reasonably result therefrom, finds that there must be in her hands, or under her control, at least the sum of $3,000, which she has failed to schedule or turn over to the trustee in bankruptcy, and that she stands in contempt of the order of the referee to that extent, and therefore the order of the court will be that she stand committed to the jail in Bates county, in this district, until she accounts for and turns over to the trustee in bankruptcy herein said sum of $3,000, or the further order of this court.