### In re GERSTEL.

#### (District Court, S. D. Illinois. February 11, 1903.)

1. BANKRUPTCY—JURISDICTION OF COURT—COMPELLING SURRENDER OF PROPERTY BY BANKRUPT.

   A court of bankruptcy has jurisdiction and power to order a bankrupt to surrender to his trustee money or property belonging to his estate, found to be in his possession or under his control, and to enforce obedience to such order by imprisonment for contempt.

2. SAME—CONCEALMENT OF PROPERTY—SUFFICIENCY OF PROOF.

   The answer of a bankrupt to a rule to show cause why he should not be required to surrender property or its proceeds to his trustee, although under oath, is not conclusive on the court, but it may inquire into all the facts and circumstances; and where it is shown that a large amount of property was in the possession of the bankrupt a short time before the adjudication, which is not accounted for in the schedules, and the bankrupt fails to make any credible explanation, showing what became of such property, and especially when, instead of making a fair and full disclosure, he fails or refuses to explain matters which should be within his knowledge, or to produce books of account and records such as would ordinarily be kept in his business, the court is justified in finding that the property or its proceeds is still in his possession or under his control, and in ordering him to surrender the same to the trustee.

In Bankruptcy. On rule against the bankrupt to show cause why she should not be required to surrender property to the trustee.

E. C. Kramer, Abbott & Edwards, and Lyon & Swarts, for trustee.

James M. Graham and James M. Sutherland, for bankrupt.

HUMPHREY, District Judge. In this case an involuntary petition in bankruptcy was filed November 12, 1902. Receiver was appointed November 15, 1902. November 20, 1902, there was an order on bankrupt to show cause why she should not be punished for contempt, for failure to turn over books and property to receiver.

Under this order, some books, papers, and checks were turned over. An order to show cause why she should not be required to turn over to the trustee all papers, books, and documents relating to said bankrupt estate, together with $35,000 fraudulently concealed by her, and belonging to said estate, and in her possession and under her control, was entered January 12, 1903, returnable February 4, 1903.

Some objection has been urged to the jurisdiction of the court to make the order herein prayed by the trustee. There can be no doubt of the power of the court in the premises. The bankrupt law gives full authority to the court to enforce obedience to all lawful orders, and to punish contempts for any disobedience.

The rule entered January 12, 1903, required the bankrupt to show cause why she should not be required to turn over certain property, or the proceeds thereof, stated to be $35,000 in amount. For four days the court has heard testimony and arguments in the case. Counsel for the respondent contend that the answer to the rule, being under oath, is conclusive upon the court. I cannot accept that view. The question seems to be settled in this circuit, having arisen in the Salkey Case, 21 Fed. Cas. 235 (No. 12,253), 6 Biss. 269, before Judge Blodgett, under the bankruptcy act of 1867 (Act March 2, 1867, 14 Stat. 517, c. 176), and his decision confirmed, on application for review, by Drummond, Circuit Judge. The same rule is followed in the Ninth Circuit, in Ripon Knitting Works v. Schreiber (D. C.) 101 Fed. 810 (Hanford, District Judge), and approved by the Circuit Court of Appeals (104 Fed. 1006).[1] The rule in these cases is that the answer of the respondent is not conclusive on the court; that the court may proceed to inquire into the facts, and where it has been shown that property has come into the hands of the bankrupt shortly before the adjudication, that the schedules give no account either of this property or its proceeds, and that the bankrupt, by answer or by examination under oath, fails to make any credible explanation, showing what became of such property, the court, when so satisfied, is authorized to consider the property or its proceeds as being still in the possession or under the control of the bankrupt, and to require by order that it be produced and delivered to the trustee, and, upon failure to obey such order, to punish by imprisonment for contempt. A consideration of all the cases on the subject leads me to the conclusion that this is the law of the case. Many other cases could be cited. I have fully considered the case of Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, together with all other cases cited by counsel for the bankrupt, but my mind adheres strongly to the rule above announced.

I have given careful consideration to the evidence in the case, both at the time it was submitted, and from my notes made upon it at the time. The proof is conclusive that in January, 1902, the bankrupt had a business at East St. Louis which was flourishing, and for at least a year had been apparently profitable. From an inventory made at that time, the stock invoiced at $18,600. This inventory was made for the bankrupt by her two sons, Abe and Morris Gerstel, who testified that it was made up from figures furnished by the heads

[1] 43 C. C. A. 682.

of various departments of stock on hand, and was believed at the time to be fairly accurate. The business of the concern ran with apparent regularity through all the months from January to July, showing goods received and moneys deposited in the bank about as such a business, carefully handled, would naturally show; the figures being, purchases from January to July, $22,722.14; payments for the same time, $20,725.25. In August the son Abe Gerstel went East, and made purchases in large amounts; carrying with him the financial statement above referred to, as affording a basis of credit. The statement was dated June 9, 1902, but the figures are the same as contained in that made for January 15th previous, and the witness testifies that the stock in June was so nearly the same as it was in January that he did not regard it as improper tó use the same figures. From August to November 12th, the date of the filing of the petition, the manner of doing business changed abruptly, and is significant; the purchases during that time being $30,642.33, and the payments $8,088.15. Many of the goods represented by these large purchases, when received at East St. Louis, were forwarded in unbroken lots to Memphis, where the respondent about that time opened a store. The figures above given have been obtained with the greatest difficulty. So far from assisting the trustee to arrive at the facts, the bankrupt and her children have thrown every obstruction in his way. The only book in evidence, kept during the entire time from January to November, was discovered by the trustee rather by accident than otherwise; and the absence of any daybook or cashbook, or other evidences by which business men keep track of' their affairs, is a fact for which no satisfactory explanation has been given. The court appointed two expert accountants to go over such books and papers as the trustee was able to procure. These were the ledger above referred to, stubs of checkbooks, a bank passbook, and a few other scattering memoranda. Yet enough has been shown in the report of the accountants to satisfy the court that the figures above given, showing purchases and payments during the time in question, are in all respects reliable. These accountants agreed in the statement that the bankrupt should have had on hand at the time of her adjudication $24,871.76, in addition to the $14,000 shown by her schedules, and this without allowing anything for the profits of the business. In explanation of this large deficit, the bankrupt, by her testimony and that of her children, seeks to explain the dissipation of the funds by various forms of extravagance in living and other expenses. The testimony utterly fails to satisfy the court. It is in many respects highly incredible, and I am unable to bring my mind to the point of accepting it as at all satisfactory to discharge the rule. The respondent and the other witnesses are suffering no mental disability. On the contrary, they are above, rather than below, the average in that regard, and are sufficiently precise and exact in matters which they desire to explain, and utterly fail or refuse to explain other important matters which they had a like opportunity to know, and which it would be to their interest to explain, if honest. · The inevitable conclusion from the testimony is that the respondent has in her possession or under her control property, or the proceeds thereof, belonging

to her estate, amounting in value to a large sum, which she has refused to turn over to the receiver or to the trustee, as ordered by the court. The exact amount in value of such withheld or concealed assets it is impossible to state, but allowing, by way of deduction from the deficit found by the accountants, for extravagant expenditures made by the members of the family during the months in question, and for losses of the business at Memphis while that business was being conducted at Memphis, the sum of $9,871.76, would still leave in her possession or under her control property, or the proceeds thereof, which should be turned over to the trustee, amounting in value to $15,000. The estimated deductions for losses and extravagant expenditures are, in my judgment, considerably greater than the testimony would justify; but as this is a proceeding in which the power of the court should be exercised with caution, and in which the court acts only upon evidence which satisfies beyond a reasonable doubt, I am disposed to give the respondent the benefit of such liberal deduction.

The court therefore finds that the respondent has in her possession or under her control property, or the proceeds thereof, belonging to her estate, amounting in value to the sum of $15,000, and which she wrongfully withholds from the trustee; and the order of the court will be that she deliver over to the trustee money or property to the amount of $15,000 in value within 10 days, and in default thereof that she be committed to the Sangamon county jail until such order be complied with.