### In re GOLDFARB BROS.

(District Court, N. D. Georgia.  May 16, 1904.)

#### No. 1,151.

1. BANKRUPTCY—CONTEMPT PROCEEDING FOR FAILURE TO SURRENDER PROPERTY—SUFFICIENCY OF EVIDENCE.

To justify an order requiring a bankrupt to turn over money or property to his trustee under penalty of imprisonment for contempt, it must be shown clearly, satisfactorily, and beyond a reasonable doubt that he has such money or property in his possession or under his control. Where the evidence establishes only a strong probability that he has some money or property which has not been accounted for, without furnishing any basis for a finding as to the amount, it is insufficient.

In Bankruptcy.  On rule against bankrupts for contempt for failure to surrender property to the trustee.

Mayson, Hill & McGill, for trustee.
Slaton & Phillips, for bankrupts.

NEWMAN, District Judge.  This is a proceeding as for contempt against the bankrupts Herman and Max Goldfarb, trading under the firm name of Goldfarb Bros.  The proceeding is based upon the allegation that the bankrupts have failed to turn over to the trustee in bankruptcy a considerable amount of merchandise, or the cash which should be the proceeds of the same.  This petition was referred to the referee, and he has taken some evidence, and makes a report finding that the bankrupts "should be chargeable with the shortage in their goods and their money in the sum of $6,245.25."  The referee reaches this conclusion by a calculation based on purchases made by the bankrupts in June, July, and August, 1903, and certain inferences from their bank account, and checks in evidence, and the amount of goods found in the stores when the receiver in the bankruptcy case took possession.

I have gone over the report of the referee and the evidence in this case several times, without being able to reach any satisfactory conclusion; and have within the last two days gone over all of it again, and am still uncertain as to what should be done in the case.  The referee admitted in evidence before him a statement handed by one of the counsel for the bankrupts to counsel for certain creditors (now counsel for the trustee), which states their recent purchases at $12,701.83.  As the basis of the whole proceeding was to show goods in the hands of the bankrupts recently purchased, I do not think this paper could properly be admitted in evidence; at least without being

supplemented by proof that the goods actually went into the possession of the bankrupts. There was an admission by one of the bankrupts that they had received goods in their store amounting to about $10,000, and this may perhaps be properly taken as a basis of calculation as to what they should have had on hand at the time the bankruptcy proceeding was instituted. If it be so taken, then, so far as I can ascertain from the statements made by the bankrupts, whose testimony was taken before the referee in this contempt proceeding, they would be entitled to a deduction from this sum of $8,750.41, and, in addition thereto, any amount for which they may have sold goods for cash, which cash was paid out by them to creditors or otherwise, and which is not now under their custody or control. It is utterly impossible to tell how much this is, and there is no satisfactory way of inferring, so far as inferences be permissible, from any other facts in the case. If this could be fairly ascertained, and the amount of stock on hand about the 1st of June, 1903, could also be ascertained, then the deduction of one from the other would seem to give the amount which the bankrupts ought to have in their possession, and which would appear to be unaccounted for; this, of course, depending upon whether or not such cash sales during the three months referred to would be as much in amount as the goods on hand on the 1st of June plus $1,249.59, the difference between $8,750.41 and $10,-000. It is fair to the bankrupts, however, to say that the $8,750.41 allowed them only includes $800 for goods sold on credit, as this is the only amount given in the evidence. This is stated by the trustee, who testified, to be the amount of "good accounts." How many bad accounts there were, or how many he did not class as "good" accounts, is not stated. But whatever amount there was of these accounts for goods sold during the three months should also be allowed the bankrupts in this calculation. This is the only method that I see by which any satisfactory conclusion in this case can be reached.

I am unable to follow the referee in the calculation he makes, and from which he derives the result which has been stated. It is entirely clear, and counsel for the trustee so concedes, that the finding of the referee that the amount of difference between the checks returned by the Third National Bank to the bankrupts and the amount of checks found by the receiver in the store should be charged to the bankrupts upon the idea that they must have drawn out the money in their own name and appropriated it, would be a rather violent inference in any case, and certainly not justifiable in a quasi criminal proceeding such as this. The bankrupts emphatically deny that they have any money or effects in their possession. In their evidence they mention several ways by which they seem to think the property may have been lost to them and to their creditors. None of these, however, although possible, are satisfactory. It will not do, of course, to say that the mere denial of the bankrupt that he has any money or effects in his possession should be sufficient to exonerate him from a charge of this kind.

I stated in the opinion filed in the contempt proceeding (In re Shachter [D. C.] 119 Fed. 1010–1015) that, if this were allowed, "the court

would be powerless, in the face of the bankrupt's oath, to require the production of property, however conclusive might be the evidence that such property was in his possession or control." The case referred to (In re Shachter) was heard in the District Court without having been sent to the referee. That case was similar to the one now before the court as respects the manner in which the conclusion was reached, and the opinion shows that the goods were traced beyond question into the possession of the bankrupts, and not satisfactorily accounted for. I would be unwilling to depart from the rule which I followed in that case, and which has been adopted by a number of judges. Ripon Knitting Works et al. v. Schrieber (D. C.) 101 Fed. 810 (in which case the petition for revision was denied by the Circuit Court of Appeals for the Ninth Circuit—104 Fed. 1006, 43 C. C. A. 682); In re Gerstel (D. C.) 123 Fed. 166; In re Kane (D. C.) 125 Fed. 984. The same rule was laid down by Sanborn, Circuit Judge, in a concurring opinion in the case of Boyd v. Glucklich, 116 Fed. 131–142, 53 C. C. A. 451.

As was stated in the Shachter Case, I see nothing in the opinion of the majority of the court in this last case which denies the right of the bankrupt court "to proceed as for contempt against a bankrupt who wrongfully refuses to turn over assets to a receiver or to a trustee in bankruptcy."

The foregoing, however, should be taken in connection with another rule, which is that a bankrupt cannot be required, under a proceeding for contempt, to do that which it is out of his power to do. The evidence in such a proceeding should satisfy the court beyond a reasonable doubt that the bankrupt has the money or goods in his possession and control, and is able to turn them over when so ordered. If he has placed them out of his possession and control, no matter how foolishly or how wrongfully, he cannot be required by an order to turn them over to a receiver or to a trustee. In a recent case in the Circuit Court of Appeals for the Third Circuit (Trust Co. v. Wallis, 126 Fed. 464), in the opinion by Circuit Judge Gray it is said:

"The court may, by summary order, direct the delivery and turning over to the trustee by the bankrupt. or by any third person holding the same under his order and control, any property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. For disobedience of such order the court in bankruptcy undoubtedly has the power, by attachment for contempt, to enforce compliance with such order. and punish refusal to comply. This power, however, is far-reaching and drastic, and must be exercised with cautious discretion. If the bankrupt denies that he has possession or control of the property, or if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. In the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the

property required by the order, then, confessedly, proceedings for contempt, by fine and imprisonment, would result in nothing; certainly not in a compliance with the order. The contempt in this case could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty."

In a proceeding of this sort, it should appear from the evidence, beyond a reasonable doubt, that the bankrupt has in his possession money and effects which should go into the hands of the trustee in bankruptcy. Judge Gray's language is that over the bankrupt's denial that he has such possession or control of the money or effects the evidence should "indisputably show" the contrary. This may be shown in the manner referred to above, or by the method followed in the Shachter Case, supra; but it should be shown clearly, satisfactorily, and beyond a reasonable doubt.

While the evidence in the case at bar shows very strong probability, and even more than a probability, that the bankrupts in this case have not dealt fairly with their creditors or with the trustee, it is not to my mind sufficiently definite and convincing to justify the conclusion that they are withholding any definite amount, or even an approximate amount, of money or goods from the trustee. Certainly it fails to show with any degree of satisfaction that they have withheld the amount found by the referee to be in their hands. If there was evidence in the record to show with some definiteness the amount of stock on hand in the bankrupts' stores on the 1st of June, 1903, and any evidence to show the amount of goods sold by them for cash which they did not deposit in bank; how much of this money was paid out, or, if not paid out, with some degree of certainty, how much was retained—data would then be had from which to make some fair calculation. But in the absence of this I do not think that any one can take this evidence, and this entire record, and say that the bankrupts have any amount of goods or money, fixing it even approximately, in their hands, which has not been turned over to the trustee.

This is a case which should have further investigation; and, while the finding of the referee cannot be approved, the contempt proceeding will be retained in court to hear additional evidence, if counsel for movant should desire to offer the same, in conformity and in line with what has been hereinbefore stated.

The order is that the finding of the referee be disapproved, but the contempt proceeding be retained for such further action as may be proper.