### In re NISENSON.

(District Court, D. New Jersey. November 15, 1910.)

1. BANKRUPTCY (§ 136*)—WITHHELD PROPERTY—DELIVERY—PROOF.

To sustain a referee's order requiring a bankrupt to surrender property alleged to have been withheld, it must be shown that the title to the property is in the trustee and the possession and control thereof is in the bankrupt, or in one who holds for him, or in his right.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 136*) — UNSCHEDULED PROPERTY — RIGHTS OF TRUSTEE — TRANSFERS.

That a bankrupt's trustee may possess himself of unscheduled property does not determine that the bankrupt may be ordered to produce it, especially where the bankrupt has made an irrevocable transfer of the title.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

3. BANKRUPTCY (§ 136*)—UNSCHEDULED PROPERTY—DIRECTION TO DELIVER TO TRUSTEE—VALIDITY.
    An order requiring a bankrupt to surrender to the trustee unscheduled property is invalid, unless the bankrupt has the power to comply therewith.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

4. BANKRUPTCY (§ 136*)—UNSCHEDULED PROPERTY—DELIVERY OF POSSESSION.
    Where a bankrupt is directed to deliver unscheduled property to his trustee, it is not material that he has not possession of the identical goods, if he has converted them into cash, or controls their possession or proceeds.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

5. BANKRUPTCY (§ 136*)—UNSCHEDULED PROPERTY—BURDEN OF PROOF.
    Where property of a bankrupt has not been scheduled, the burden is on him to satisfactorily account for its nonproduction, but in assuming such burden he is entitled to the benefit of every reasonable doubt; he being subject to imprisonment for contempt for failure to surrender the same unless satisfactorily accounted for.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

6. BANKRUPTCY (§ 136*)—UNSCHEDULED PROPERTY—DISAPPEARANCE—EVIDENCE.
    Evidence *held* insufficient to sustain a bankrupt's explanation of his failure to surrender unscheduled property to his trustee, except with reference to certain jewelry pawned to raise money to pay his counsel in a breach of promise proceeding, which the trustee might have corroborated or disproved by calling such counsel, but which he failed to do.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of bankruptcy proceedings of Charles Nisenson. On petition to review an order directing the bankrupt to pay over to the trustee the sum of $1,200 and to deliver to him a diamond ring, a diamond locket, a gold watch, and diamond stud of the aggregate value of $500. Modified and affirmed.

William Greenfield, for bankrupt.
William J. Kearns, for trustee.

RELLSTAB, District Judge. Charles Nisenson was adjudicated a bankrupt, on his own petition, on the 2d day of December, 1909. His schedules did not mention such property. In January, 1907, he purchased from his father the business of cleaning and trimming silk hats, which he carried on in a small way in Newark, N. J., until January, 1908, when he sold it back to his father for the sum of $200. In January, 1909, a suit was instituted against him for his breach of promise of marriage, and in November, 1909, a judgment was entered against him in such suit for the sum of $3,500. In April, 1909, he sold his shares in a building and loan association, obtaining therefrom $1,200. At that time he was the owner of the watch and jewelry in question. On his examination before the referee under section 7a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]), and subsequently, on the rule to show cause why an order should not be made directing him to surrender such property to the trustee, he testified that, right after he withdrew such money, he paid $300 of it to his mother for back board; that in May following he went to Providence, R. I., and that during a

two months'· stay there spent about $700 of such money in gambling and consorting with lewd women; that on November 12th, after his return to Newark, he pawned the diamond ring and locket for $225, and that a few days later he sold the pawn ticket to an unidentified stranger for $25, and that about the same time he sold his watch and stud to another unidentified stranger for $50.

To sustain the referee's order, it must appear, first, that the title to this property is in the trustee; and, second, that the possession and control of it is in the bankrupt, or in one who holds for him or in his right. All property of the bankrupt, including that conveyed by him within four months of the institution of the bankruptcy proceedings, with intent to hinder, delay, or defraud his creditors, except that conveyed to purchasers in good faith and for a present fair consideration, remains a part of the assets and estate of the bankrupt and passes to his trustee, and all such not turned over is recoverable by him for the benefit of the creditors. Section 67e of the bankruptcy act. The title to such property vests in the trustee by operation of law, as of the date of the adjudication. Section 70a, cl. 4, 5. That the trustee may possess himself of the unscheduled property does not, however, determine that the bankrupt may be ordered to produce it. His parting with the title may be irrevocable as to him. In re White (D. C.) 109 Fed. 635, 6 Am. Bankr. Rep. 451; In re Wishnefsky (D. C.) 181 Fed. 896. He may be punished as in contempt of court for his failure to obey all lawful orders requiring him to aid the trustee in recovering such property, and his conduct, if fraudulent, may disentitle him to a discharge, and render him liable to criminal prosecution; but, unless he has the power to turn over such property, no order requiring him to do so is valid. In re Schlesinger (D. C.) 97 Fed. 930, 3 Am. Bankr. Rep. 342, affirmed 102 Fed. 119, 42 C. C. A. 207, 4 Am. Bankr. Rep. 361; In re Mayer (D. C.) 98 Fed. 839, 3 Am. Bankr. Rep. 533; Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, 8 Am. Bankr. Rep. 393; American Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342, 11 Am. Bankr. Rep. 360; In re Goldfarb Bros. (D. C.) 131 Fed. 643, 12 Am. Bankr. Rep. 386; In re Sax (D. C.) 141 Fed. 223, 15 Am. Bankr. Rep. 455; Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254, 16 Am. Bankr. Rep. 163; In re Lesaius (D. C.) 163 Fed. 614, 21 Am. Bankr. Rep. 23; In re Ruos (D. C.) 164 Fed. 749, 21 Am. Bankr. Rep. 257; In re Berman (D. C.) 165 Fed. 383, 21 Am. Bankr. Rep. 139. To hold otherwise would be to require him to do the impossible. The order to turn over is in the nature of a possessory writ. It presupposes that the property is in his possession or under his control. His present ability to comply with the order, and not his liability to be penalized for having disabled himself from doing so, is the basis for the making of such order. Whether he has the identical goods is not important, if he has converted them into cash, or has, or controls the proceeds. In re Lesaius, supra; In re Gerstel (D. C.) 123 Fed. 166, 10 Am. Bankr. Rep. 411.

If the bankrupt's testimony as to the sale of his watch and jewelry and his disposition of the moneys is true, the title to such property other than the $300 alleged to have been paid for board never vested

in the trustee. The referee has concluded that such testimony is untrue, and founds his order on the bankrupt's failure to satisfactorily account for such property, the same having been admittedly in his ownership and possession recently before he filed his petition in bankruptcy. The presumption that property traced to the recent possession or control of the bankrupt remains there until he satisfactorily, accounts for its disposition or disappearance (Boyd v. Glucklich, supra; Seigel v. Cartel, 164 Fed. 691, 90 C. C. A. 512, 21 Am. Bankr. Rep. 140) is a presumption of fact, varying in weight. The weight to be given depends upon the circumstances of each particular case. In the present case there is no question of the bankrupt's recent possession of the property mentioned in the referee's order. This property not having been scheduled, the bankrupt is called upon to give an explanation of its disappearance. The burden is upon him to satisfactorily account for its nonproduction, but in assuming such burden he, because of the drastic means that may be invoked to enforce the order to turn over (imprisonment for contempt), is entitled to the benefit of the reasonable doubt. In re Schlesinger, supra; In re Mayer, supra; Boyd v. Glucklich, supra; In re Shachter (D. C.) 119 Fed. 1010, 9 Am. Bankr. Rep. 499; In re Goldfarb Bros., supra.

He claims to have irrevocably disposed of it. Does he satisfactorily account for its disappearance? In the main his explanation is unbelievable. The fact that the bankrupt had $1,200 invested in a building and loan association indicates that at some time prior to his entanglement with the plaintiff in the breach of promise suit he was a person of some thrift, a fact that is not to be lost sight of when his explanation as to how he squandered the greater part of it is considered. His withdrawal of the money from the loan association shortly after the institution of such breach of promise suit, his removal from the state a few weeks thereafter, and his disposing of his other possessions about the time that a verdict was rendered against him in such suit, show a determination to prevent his property from being taken on execution by the judgment creditor. His first act upon the withdrawal of such money, according to his testimony, and that of his father and mother, was to pay over to the latter the sum of $300 for board. If board to that amount was due from him, such payment was within his rights, and would be a satisfactory accounting, so far as this order is concerned, as such money would then be out of his possession and beyond his control. The referee did not believe his testimony in this regard, although corroborated in part by that of his father and mother. Neither do I. Even in cold type it lacks probability. If board was exacted from the son, that he should have been permitted to get so far behind, when it was known to the parents what his earnings were, and which they must have known because of their acquaintance with the character of his employment, is not likely, in view of their later attitude as testified to by the mother that they refused to give him his meals because he would not pay for them. To my mind the matter of an unpaid board bill was an afterthought, and the bankrupt either did pay his board, week by week, if board was exacted, or he was given his board with-

out charge. Such payment, if made, was only a subterfuge—but part of a scheme to remove the money beyond the reach of the creditors, to be returned to the bankrupt on demand.

As to the disposition of the remainder of such money: The bankrupt's testimony is uncorroborated either by human testimony or by the circumstances detailed by him, accompanying the expenditure of such moneys. He says he took this money with him to Providence, R. I., for the purpose of investing it in business. He accepted employment at $12 a week, but made no such investment. He spent such money in riotous living, gambling—playing dice and shooting crap, and consorting with lewd women. He fails to give the names of persons with whom he gambled, the places where, the times when, or the names of any of the persons present when, he gambled. His explanation of how he was accosted by the person who took him to the gambling place, his introduction to the game, his repeated visits and losses, is a recital that has the possibility of truth, but is improbable as applying to a man of his thrifty disposition. His explanation as to the meeting of the particular woman that he names, and the unnamed others whose acquaintance he made through her instrumentality, is of the same character, and does not commend itself to the unprejudiced mind. The failure of the bankrupt to remember the details of these transactions such as would impress themselves upon the ordinary mind, suggest purposed evasion, or untruthfulness. Is it evasion? If so, to hide what? Gambling and consorting with lewd women are frequently indulged in by persons who would not care to have such conduct brought to light, and evasive answering in an attempt to cover up such profligacy may be well understood, but the bankrupt seeks no such cover. He not only admits his profligacy, but asserts it in his defense. His resort, therefore, to the answers which indicate a lack of observation of the things that impress themselves on the ordinary person, or to a failure to remember, was not for the purpose of hiding his shamelessness. Like acts of profligacy have been frequently asserted in explanation of disappeared assets, and as frequently repudiated. Schweer v. Brown, 130 Fed. 328, 64 C. C. A. 574, 12 Am. Bankr. Rep. 178; In re Lasky (D. C.) 163 Fed. 99, 20 Am. Bankr. Rep. 729; Seigel v. Cartel, supra; In re Henderson (D. C.) 130 Fed. 385, 12 Am. Bankr. Rep. 351. In the last-cited case Judge McPherson held:

"An order requiring a bankrupt to turn over to his trustee a sum of money which he was shown to have during the month prior to his bankruptcy will be approved where the bankrupt's testimony that the money was lost in gambling and speculation is wholly uncorroborated."

The bankrupt's testimony as to his profligate conduct has all the ear-marks of untruthfulness. The referee had opportunity to observe his manner in testifying, an inestimable advantage in cases of this character. In re Schulman, 177 Fed. 191, 101 C. C. A. 361, 23 Am. Bankr. Rep. 809. He pronounced it untruthful, and I concur in his conclusion. His testimony, therefore, in regard to such expenditures, bristling with inherent improbabilities, and uncorroborated, can-

not be accepted as a satisfactory explanation for his failure to include such sum in his schedule of assets.

As to the remaining property: I concur with the referee in his finding as to the sale of the watch and stud. The bankrupt's testimony in this particular is uncorroborated and does not carry the impress of truth; the presumption arising from his recent possession of such articles is not overcome thereby, and they must be held to be still in his possession or under his control. I am constrained to disagree with the referee in his finding as to the diamond ring and locket. The bankrupt's testimony of the pawning of the diamond ring and locket has some corroboration, and, while such transaction is not free from the suspicion that such pawning was colorable rather than real, yet, in view of the uncontradicted testimony that the bankrupt had counsel in the breach of promise suit, and in the preparation for the pending bankruptcy proceedings, and his giving the names of the counsel so engaged, and the amounts paid each, and the trustee's ability, by reason of the definiteness of such information, to call such counsel in contradiction, if he disbelieved it, and the amounts paid said counsel, aggregating the amount obtained for the pledged articles, and the alleged sale of the pawn ticket, the bankrupt's explanation of the disposal of such articles and the proceeds thereof will, in a proceeding of this character, be accepted as satisfactory. It is within the bounds of probability that such pledging and sale of the pawn ticket were but a fraudulent scheme to prevent such articles from passing to the trustee, but, with the fact of payment to counsel of $250 being established, it would be a bootless task to balance the probabilities whether such payments were made out of the proceeds of such pawning and sale or out of the other moneys found to be in the bankrupt's possession or control. A satisfactory accounting for that amount having been made, the bankrupt's further explanation as to the source from which such moneys were derived will be accepted as the fact.

My conclusion, therefore, is that the order made by the referee should be modified by eliminating therefrom the diamond ring and diamond locket. In all other respects it is affirmed.