In re SILVERMAN.

(District Court, N. D. New York. August 14, 1913.)

1. BANKRUPTCY (§ 303*) — COMPELLING DELIVERY OF PROPERTY — SUFFICIENCY OF EVIDENCE.

Evidence, on an application by a trustee in bankruptcy to compel the bankrupt to turn over to him property claimed to be withheld, held sufficient to support a finding by the referee that the bankrupt had in his possession, or subject to his control, merchandise or the proceeds thereof, which he had concealed from the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. BANKRUPTCY (§ 228\*)—REVIEW BY JUDGE OF PROCEEDINGS BEFORE REFEREE.**

On an application by a trustee in bankruptcy for an order requiring the bankrupt to turn over to him property claimed to be concealed, the credibility of witnesses was for the referee, and the judge on review would not reverse unless there was a clear case of error as to the facts or on questions of law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.\*]

**3. BANKRUPTCY (§ 303\*)—COMPELLING DELIVERY OF PROPERTY—SUFFICIENCY OF EVIDENCE.**

While, before a bankrupt can be ordered to deliver to the trustee property claimed to be concealed by him, the evidence must clearly and satisfactorily show that he has the property or its proceeds and is able to comply with the order, the trustee is not required to prove by eyewitnesses that the bankrupt has the goods in his possession or the proceeds in the bank or in his pocket.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.\*]

**4. BANKRUPTCY (§ 303\*)—COMPELLING DELIVERY OF PROPERTY—SUFFICIENCY OF EVIDENCE.**

Where, on an application by a trustee in bankruptcy to compel the bankrupt to deliver to him property claimed to be concealed or its proceeds, the evidence showed the recent possession by the bankrupt of thousands of dollars worth of property and but comparatively small sales, no money or proceeds of sales, but a small amount of property on hand, no uncollected accounts, no loss or destruction of goods, that the bankrupt had shipped goods as baggage which he had not accounted for, and that he had made no payments which could account for the disappearance of the proceeds if the goods were sold, it supported a finding that he had either the goods or their proceeds in concealment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.\*]

In the matter of Barney Silverman, bankrupt. Review of order of referee directing the bankrupt to turn over to his trustee goods, wares, and merchandise of the value of $2,100, or in case he has secretly disposed thereof, then the proceeds to that amount. Order affirmed.

McGowan & Stolz, of Syracuse, N. Y., for trustee.
Claude E. Guile, of Fulton, N. Y., for bankrupt.

RAY, District Judge. [1] The referee has found, and the evidence amply sustains the finding: That the bankrupt, engaged in the mercantile business at Fulton, N. Y., and that before that he had been engaged in similar business at Watertown, N. Y., and that when there he went through involuntary bankruptcy. That he closed his store at Fulton December 15, 1911, and the next day filed his voluntary petition in bankruptcy. He took with him from Watertown to Fulton October 1, 1909, goods which cost $3,000 or more but which he says were worth some $1,600. He then owed no debts except his brother Isaac Silverman the sum of $250. In May, 1910, the bankrupt made representations in writing, for the purposes of obtaining credit, that his fixtures and stock of goods on hand were worth $5,000, and that he owed $1,357 and was worth $3,643. July 1, 1911, he claims to have had a stock of goods worth $1,500. From July 1, 1911, to December 15, 1911, he purchased goods to the amount of $4,956.49; total $6,-

456.49. At the time he closed his store in December, he had cash $23.75, $200 in value of the goods purchased after July 1, 1911, and $1,101.94 in value of old goods; total $1,325.69. In short, from July 1, 1911, to December 15, 1911, 5½ months, he reduced his stock, that which he had July 1st, and that purchased during the time mentioned, $5,130.80. He was then, December 15, 1911, owing on his own showing about $5,251, a loss in about 19 months of some $7,409, or about that. He does not explain this loss, but does claim sales were slow, etc. But he obtained the property on credit and disposed of it somewhere. He was running his business during this time and he says depositing the proceeds of sales less living and regular expenses in the Citizens' National Bank at Fulton.

He sold at retail in no case below cost, and all his payments were represented by bills and vouchers except such expenses and he paid out no cash except for expenses. His rent for store and house were $50 per month, or some $275 for the 5½ months, which with operating expenses he paid by checks on his deposits. He paid during this time to his son, clerk hire about $110; to his creditors $25.54, and to the Observer in cash and trade $39.95. The referee allows for living expenses and incidental expenses $600.58 and there was no evidence they exceeded that sum. His total deposits during that time were $2,303.23. The total credits, in any event, the referee finds cannot exceed $4,-380.24. He is not charged with any profit on goods sold. The bankrupt did not account or claim to account for this disappearance of goods or of the proceeds thereof, if sold. There is no evidence of fire or casualty or theft or that he lost in speculation or gambling. He paid no old debts except as stated. There was evidence that he shipped away goods in trunks on two occasions; the destination and disposition being unknown. The bankrupt does not account for these goods or their disposition or loss. He simply denies the fact. He told a friend he had shipped goods as baggage and that all it cost was the price of a ticket. He also admitted to him that he had saved $4,200 in cash and said that his creditors trimmed him at Watertown and he was going to trim them; that he was going to fail but would get even with his creditors. He kept no books or accounts showing his transactions. True, the man who gave this testimony had a bias against Silverman, who had testified against him to secure an indictment for arson.

[2] The referee saw and heard all the witnesses including the bankrupt. Their credibility was for the referee, and it has been many times decided that the judge on review should not reverse except in clear cases of error as to the facts or on questions of law. The decisions are numerous and uniform and this court has always so held. The referee was far better able than this court to determine the credit that should be given to Silverman and the witness referred to. It would be very unwise for a court that has not seen the witnesses to reverse the referee who did on the questions of the credibility of such witnesses.

Is the evidence sufficient, clear, and satisfactory that Silverman has concealed from his trustee and has in his possession or subject to his control merchandise of the value of $2,100, or the proceeds in case he

has disposed of it? It is clear on his own testimony, taking the facts as a basis and not his conclusions or mere general statements, that he did not dispose of these goods at his store in Fulton, in due course of business, or that, if he did, he neither deposited the money in bank nor expended it. In view of the satisfactory evidence that he shipped goods away in trunks and has neither accounted for such goods nor their proceeds, it is equally clear that the goods are in the possession of the bankrupt somewhere or subject to his order, unless he has disposed of them in which case presumptively he has the proceeds. The law will not presume that he has sold the goods and spent or given away the money. The trustee has filed exceptions to the report and argues with force that the evidence shows a much larger quantity of goods in Silverman's possession than found by the referee. The referee was conservative indeed, but I am not disposed to disturb his findings.

[3] It is, of course, true that the evidence must clearly and satisfactorily show that the bankrupt has the property, or its proceeds, and is able to comply with the order. But this rule does not require that the trustee prove by eyewitnesses that the bankrupt now has the goods in his possession, or the money in bank, or in his pocket. Establish such a rule and the dishonest in contemplation of bankruptcy may conceal the goods themselves (bury valuables in the ground) or sell and store away or bury the money in some secret place, obtain a discharge, and, so long as there is no eyewitness as to the whereabouts of the money or property, go free to enjoy at a later day the fraudulently obtained and concealed property.

[4] When, as here, the evidence shows the recent possession by the bankrupt of thousands of dollars worth of property and but small sales comparatively, and no money or proceeds if sold, and but a small amount of the property on hand and no uncollected accounts, no loss or destruction, etc., of goods, and, added to this, there is substantial evidence that goods were shipped away by the bankrupt as baggage and not accounted for and the bankrupt made no payments which could account for the disappearance of the proceeds if the goods were sold, we can arrive at but one conclusion, and that is that the bankrupt has either the goods or their proceeds in concealment. Seigel v. Cartel (C. C. A. 8th Circuit) 164 Fed. 691, 90 C. C. A. 512; In re Charles Nisenson (D. C.) 24 Am. Bankr. Rep. 915, 182 Fed. 912; In re Deuell (D. C.) 100 Fed. 633; In re Cashman (D. C.) 103 Fed. 67; In re Finkelstein (D. C.) 101 Fed. 418; In re Morgan (D. C.) 101 Fed. 982; In re Meyers (D. C.) 96 Fed. 408.

In Seigel v. Cartel, supra, the goods were shown in possession between January 1, 1904, and August of that year, a period of seven months. In re Charles Nisenson, supra, the bankruptcy was in December, 1909, and the property was shown in his possession in January preceding. In this last case Judge Rellstab said:

"The presumption that property traced to the recent possession or control of the bankrupt remains there until he satisfactorily accounts for its disposition or disappearance (Boyd v. Glucklich, supra [116 Fed. 131, 53 C. C. A. 451] Seigel v. Cartel [C. C. A. 8th Cir.] 21 Am. Bankr. Rep. 140, 164 Fed. 691 [90 C. C. A. 512]) is a presumption of fact, varying in weight. The weight to be given depends upon the circumstances of each particular case.

In the present case there is no question of the bankrupt's recent possession of the property mentioned in the referee's order. This property not having been scheduled, the bankrupt is called upon to give an explanation of its disappearance. The burden is upon him to satisfactorily account for its nonproduction, but in assuming such burden he, because of the drastic means that may be invoked to enforce the order to turn over (imprisonment for contempt), is entitled to the benefit of the reasonable doubt. In re Schlesinger, supra [(D. C.) 97 Fed. 930]; In re Mayer, supra; Boyd v. Glucklich, supra; In re Shachter (D. C. Ga.) 9 Am. Bankr. Rep. 499, 119 Fed. 1010; In re Goldfarb Bros., supra [(D. C.) 131 Fed. 643]."

In Seigel v. Cartel et al., supra, the court said:

"The evidence clearly enough shows that this merchant, between the 1st day of January, 1904, and August of that year, just preceding the proceeding in bankruptcy, disposed of between $11,000 and $13,000 worth of goods. In other words, he was short that amount of stock at the time of the declared bankruptcy. He was called upon by the referee to account for these goods or their proceeds; the presumption being, as they were not on hand, that he had disposed of them and the proceeds were in his possession. In re Deuell (D. C.) 100 Fed. 633; In re Cashman (D. C.) 103 Fed. 67."

I do not see how the conclusion can be avoided that Silverman has the goods or the money, their proceeds, and probably some of both, in his actual possession, or under his control somewhere, to the amount, in value, of $2,100, and probably more, and the order of the referee is therefore affirmed.